Mary Peter CUDD

v.

Jerome ALDRICH, Individually and in his Official Capacity as Criminal District Attorney of Brazoria County, Texas; Brazoria County, Texas; and John Willy, Individually and in his Official Capacity as County Judge of Brazoria County, Texas.

No. CIV. A. G–96–732.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 7, 1997.

Darah Sue Headley, Houston, TX, for plaintiff.

Henry W. Prejean, Jr., Angleton, TX, Brian Keith Bricker, Office of Brazoria Cty. Dist. Atty., Angleton, TX, for defendants.

## ORDER

KENT, District Judge.

Plaintiff Mary Peter Cudd brings this action under 42 U.S.C. § 1983, alleging that her First Amendment rights were violated when she was fired in retaliation for her political affiliation. Now before the Court is Defendant John Willy's Motion to Dismiss in his individual capacity, dated August 12, 1997, Defendant Jerome Aldrich's Motion for Summary Judgment in his individual capacity, dated September 19, 1997, and the Motion for Summary Judgment of Defendants Brazoria County and Jerome Aldrich and John Willy in their official capacities, dated September 19, 1997. For the reasons stated below, the Motion to Dismiss and both Motions for Summary Judgment are **GRANTED.**

## I. FACTUAL BACKGROUND

Plaintiff was an Assistant District Attorney in the Brazoria County District Attorney's Office from January 1, 1990 until January 1, 1995. She was hired in 1990 by former Criminal District Attorney Jim Mapel. In addition to her general duties as an assistant prosecutor, Plaintiff was the attorney in charge of the Appellate and Hot Check Divisions.

In the 1994 Criminal District Attorney election, Mapel did not run for reelection. The candidates in that race were John Davis and Jerome Aldrich. During the campaign, Plaintiff supported Aldrich's opponent by placing campaign signs for Davis in her front

yard. She also refused Aldrich campaign literature offered to her on her way to vote by a campaign volunteer distributing such literature near the voting headquarters.

Aldrich defeated Davis for the position of Criminal District Attorney of Brazoria County. After the election, all employees were informed that if they wanted to have a position with the District Attorney's office in 1995, they would have to submit employment applications and interview for a position. Plaintiff submitted an application and allegedly had problems getting an interview scheduled. During Plaintiff's interview, Aldrich admittedly asked her questions about her political patronage of his opponent. Plaintiff alleges Aldrich asked her whether she put campaign signs in her front yard, how many signs she put in her yard, how long the signs were posted, and several other questions regarding the signs and alleged comments she made during the campaign. On December 24, 1994, Plaintiff received a letter from Aldrich informing her that there was no position available for her effective January 1, 1995.

## II. MOTION TO DISMISS BY DEFENDANT JUDGE WILLY

■ Judge John Willy moves to dismiss the claims against him for failure to state a claim. Judge Willy was joined because he failed to act to protect Plaintiff's First Amendment rights, despite allegedly being fully aware that Aldrich terminated Plaintiff based on the exercise of her First Amendment rights. The Court finds, and Plaintiff concedes, that there is no authority for any cause of action against Judge Willy. Furthermore, judges are absolutely immune for all judicial acts or omissions exercised within their judicial capacity. *Krueger v. Reimer*, 66 F.3d 75 (5th Cir.1995); *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). Even if a cause of action did exist, Judge Willy is entitled to absolute immunity. Accordingly, Judge John Willy's Motion to Dismiss in his individual capacity is hereby **GRANTED** and all such claims are **DISMISSED WITH PREJUDICE.**

## III. SUMMARY JUDGMENT MOTIONS

Plaintiff asserts that she was terminated in retaliation for her political patronage of the newly-elected district attorney's opponent, in violation of her First Amendment right to freedom of expression. Defendants Brazoria County, and Jerome Aldrich and John Willy in their official capacities, move for summary judgment on the ground that the termination was justified because Plaintiff's position is one that legitimately requires political affiliation or loyalty. Defendant Aldrich also moves for summary judgment in his individual capacity on the ground of qualified immunity.

### A. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment must not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *The Elrod–Branti Exception to First Amendment Protection for Patronage Dismissals*

■ Although the First Amendment prohibits an employer from terminating an employee because of the employee's political

affiliation, the Supreme Court has recognized that where "an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). One of the purposes of this public employee exception to First Amendment protection is to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976). To fit under the *Elrod–Branti* exception, the hiring authority must justify the dismissal by demonstrating that "party affiliation is an appropriate requirement for the effective performance of the public office involved." [1] *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. *Branti* held that public defenders are entitled to First Amendment protection from patronage dismissals because, in their role as adversary to the government, their political loyalty to the dominant party is not essential. The Court, however, expressly excepted the applicability of its holding to officials such as prosecutors, who further governmental policies. *Id.,* 445 U.S. at 519 n. 13, 100 S.Ct. at 1295 n. 13.

■ Whether a government position is "political" and thus subject to the *Elrod–Branti* exception is a question of law for the Court. *McGurrin Ehrhard v. Connolly,* 867 F.2d 92, 93 (1st Cir.1989). The reviewing court must determine whether the legitimate interests of the government in requiring political loyalty outweigh the First Amendment rights of the terminated employee.

The Fifth Circuit has not addressed the *Elrod–Branti* exception in the context of the dismissal of an assistant district attorney. However, the Fifth Circuit has applied the exception to various other positions. *See, e.g., Stegmaier v. Trammell,* 597 F.2d 1027, 1040 (5th Cir.1979) (deputy circuit clerk falls within exception as a "confidential employee"); *Soderstrum v. Town of Grand Isle,* 925 F.2d 135, 141 (5th Cir.1991) (personal secretary to police chief found to be a confidential employee); *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 995 (5th Cir.) (school superintendent who occupied a confidential and policymaking position found to be within exception), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992); *but see, e.g., Matherne v. Wilson,* 851 F.2d 752, 761 (5th Cir.1988) (nonpolicymaking deputy sheriff cannot be terminated based on political activity). Other circuits that have addressed the applicability of the exception in the context of attorney dismissals have concluded that assistant district attorneys and other government attorneys do occupy positions requiring political loyalty, and are accordingly not entitled to First Amendment protection for political dismissals. *See, e.g., Gordon v. County of Rockland,* 110 F.3d 886, 890–892 (2d Cir.) (assistant county attorneys), *cert. denied,* —— U.S. ——, 118 S.Ct. 74, 139 L.Ed.2d 34 (1997); *Monks v. Marlinga,* 923 F.2d 423 (6th Cir.1991) (assistant prosecuting attorneys); *Williams v. City of River Rouge,* 909 F.2d 151 (6th Cir.1990) (city attorney); *Livas v. Petka,* 711 F.2d 798 (7th Cir.1983) (assistant state attorney to a public prosecutor); *Mummau v. Ranck,* 687 F.2d 9 (3d Cir.1982) (assistant district attorney); *Ness v. Marshall,* 660 F.2d 517 (3d Cir.1981) (city solicitor and assistant city solicitor); *Newcomb v. Brennan,* 558 F.2d 825 (7th Cir.) (deputy city attorney), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977); *Finkelstein v. Barthelemy,* 678 F.Supp. 1255

---

1. Of course, the plaintiff must first establish that he or she was discharged because of political affiliation. This involves a burden-shifting test, in which the plaintiff must show that the political affiliation was a motivating factor behind the dismissal. Once plaintiff establishes this, the burden shifts to the hiring authority to show that the plaintiff would have been dismissed regardless of his or her political affiliation. *See Mt.*

*Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). In this case, although Aldrich denies that he fired Plaintiff because of her political activities, the Motion for Summary Judgment is based on the premise that the dismissal was justified. Therefore the Court need not address whether Plaintiff was indeed discharged for political reasons.

(E.D.La.1988) (assistant city attorney); ·see also Bauer v. Bosley, 802 F.2d 1058 (8th Cir.1986) (staff legal assistant in office of clerk of circuit court), cert. denied, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).

■ Several different factors have been considered by the courts in determining whether the Elrod–Branti exception applies. The Second Circuit has comprised a comprehensive list of eight factors, including:

whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

Gordon, 110 F.3d at 889–90 (quoting Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir.1994)). The inquiry is a case specific one, with the ultimate factor being whether the government can show that political loyalty is a proper requirement for the position. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." Connick v. Myers, 461 U.S. 138, 151–52, 103 S.Ct. 1684, 1692–93, 75 L.Ed.2d 708 (1983).

■ In evaluating whether a position is subject to the Elrod–Branti exception, a court must look at the duties inherent in the position, rather than the actual duties performed by the employee. Monks, 923 F.2d at 425; Mummau, 687 F.2d at 10; Ness, 660 F.2d at 521. "The idea that job performance (rather than job description) should control Elrod–Branti analysis has been consistently rejected by this court and others." Gordon, 110 F.3d at 888. The critical factors in Gordon, which involved the termination of assistant county attorneys, were that the plaintiffs could "act in the stead of the County Attorney," and that the attorneys could perform duties such as " 'rendering legal opinions, drafting ordinances, [and] negotiating contracts.' " Id. (quoting Ness, 660 F.2d at 521–22). Such duties " 'define a position for which party affiliation is an appropriate requirement.' " Id.

■ Based on the foregoing legal principles, the Court finds that the position of assistant district attorney is one in which the government has a vital interest in requiring political loyalty, and therefore falls within the Elrod–Branti exception to the First Amendment's ban on patronage dismissals. Under Texas law, assistant prosecuting attorneys "may perform all duties imposed by law on the prosecuting attorney." TEX.GOV'T CODE ANN. § 41.103(b). Texas law therefore "imposes the inherent policymaking responsibilities of the prosecutor on the assistant prosecutor." Monks, 923 F.2d at 426. Because he can be held liable for the actions of an assistant district attorney, the district attorney must be able to select one "in whom he has in whom he has total trust and confidence and from whom he can expect, without question, undivided loyalty." Stegmaier, 597 F.2d at 1040. Thus the Court finds, as a matter of law, that Plaintiff falls into the category of public employees whose First Amendment rights are outweighed by the state's interest in promoting effective government.

Furthermore, as assistant district attorney, Plaintiff was the attorney in charge of the Appellate and Hot Check Divisions. According to the summary judgment evidence in this case, especially the affidavit of Jim Mapel, the former district attorney, Plaintiff was delegated complete discretion to handle appeals, answering only to Mapel. Mapel avers that he relied on her advice in appellate matters. Cudd also formulated plans for the implementation of the goals of the district attorney. As Hot Check Attorney, Plaintiff had authority to implement the district attorney's policies and to institute any procedures she deemed appropriate in effecting those policies. She also had authority over issuing probable cause statements for hot check cases to go forward. Finally, the evidence establishes that she advised Mapel on hot check law, policy, and operational procedure for implementing policy. That Cudd disputes that she exercised her inherent policymaking authority is irrelevant: the inherent duties of her position clearly fall within the "narrow band of fragile relationships requiring for job security loyalty at the

expense of unfettered speech." *Gonzalez v. Benavides,* 712 F.2d 142, 150 (5th Cir.1983).

Plaintiff nevertheless argues that, although she occupied the position of assistant district attorney, her duties were "largely ministerial," technical, and non-discretionary such that her position did not require political loyalty. Regardless of whether Plaintiff's characterization of her job is accurate, her legal argument is meritless. Plaintiff's precise arguments have been recently addressed and rejected by the Second Circuit in *Gordon,* discussed above. Moreover, the Court finds Plaintiff's characterization of her position to be highly doubtful, based on her deposition responses. The statements Plaintiff asserts in her deposition are in many places markedly vague and borderline deceptive. For instance, when asked whether, as Hot Check Attorney, she was responsible for deciding probable cause, Plaintiff asserts that her only role was to check the merchant's affidavit with the probable cause statement prepared by the clerk to see if they matched. When specifically asked who made the probable cause determination, Plaintiff stated "I don't know—I was telling you how it worked, so I would assume it would be [the clerk], but I would check her work." She further asserted that she simply signed off on the probable cause statement "because an attorney had to sign off on it."

Regardless of whether Cudd's position was truly as mind-numbing and tedious as she characterizes it to be, the Court finds her deposition responses genuinely disturbing. If Plaintiff truly had no function whatever except to mindlessly match two documents together and sign off as an attorney if they matched, then such conduct is not only belittling to Plaintiff and to all other attorneys, but it is potentially violative of her duty as a district attorney. Plaintiff's deposition is replete with other instances of similarly vague and incredible statements. For example, Plaintiff stated that she did not know who reviewed her work, that she did not know what former District Attorney Mapel did, that she did not know who her supervisor was but could only assume who it was, and that she "had always been told" she was "assigned to the secretary." The former al-

legations are dubious at best. The final one is asinine on its face. Ms. Cudd paints a bleak picture of her job as assistant district attorney, one in which she mindlessly checked documents to ensure that the clerk transcribed them correctly; signed documents without actually knowing what they represented, where they were going, or who would act on them; did not know who supervised her work; and was unaware of what her boss, the district attorney, did with his time. If Ms. Cudd's characterization of her job responsibilities (or lack thereof) is accurate, her position was below that of the clerk and even her secretary. If true, the Court sympathizes, as it too feels that it has always been subordinate to its remarkably professional and intelligent secretary. Unfortunately, in the real world, responses such as the ones given by Ms. Cudd cause the Court to give her deposition very little credence, if any at all. Indeed, if it typifies her integrity in the execution of her official duties, she should have been discharged on that basis alone.

In sum, the position of assistant district attorney requires a close working relationship with the district attorney, an elected official who must answer to the constituents of the county. It is a job requiring judgment, integrity, intelligence, and wisdom. When the district attorney has no confidence in the loyalty of his assistant district attorneys, who possess the same inherent policymaking authority as he does, it can cause manifest discord, prosecutorial disparity, and confusion. Such discord and confusion can thwart the programs and policies of the elected district attorney, and jeopardize his public status. Ms. Cudd elected to participate in the politics of her office, and must face the consequences of her choice. Simply put, she backed the wrong horse. In politics, it is a common sense rule that the winner gets to call the shots. Upon being elected, Aldrich was entitled to ensure that his administration would not be undercut by employees that he knew did not support his policies. Both the law and common sense support his decision. Accordingly, the Motion for Summary Judgment of Brazoria County, and Jerome Aldrich and John Willy in their official capacities, is hereby **GRANT-**

**ED** and all such claims are DISMISSED WITH PREJUDICE.

### C. *Qualified Immunity*

██ Defendant Aldrich has also moved for summary judgment on the claims against him in his individual capacity, on the basis that he is entitled to qualified immunity. Qualified immunity protects government officials from liability for conduct in the course of their official duties unless the alleged conduct violated clearly established law of which reasonable public official would have been aware. *Gunaca v. State of Texas,* 65 F.3d 467, 473 (5th Cir.1995); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). Thus, if Aldrich can show that firing Plaintiff did not violate any clearly established constitutional law, he is entitled to qualified immunity in his individual capacity.[2]

██ The first inquiry is whether Plaintiff has alleged the violation of a constitutional right. *Gunaca,* 65 F.3d at 473. The Supreme Court has held that dismissal from employment because of political patronage is entitled to First Amendment protection because "political belief and association constitute the core of those activities protected by the First Amendment." *Elrod,* 427 U.S. at 357, 96 S.Ct. at 2681. In her Second Amended Complaint, Cudd alleges that she was fired in retaliation for her actions, statements, and political patronage in support of Aldrich's opponent in the criminal district attorney election. Thus she has properly alleged the violation of a constitutional right.

The next inquiry for qualified immunity purposes is whether Cudd's First Amendment right to be free from political patronage dismissal was clearly established at the time of the alleged violation. *Gunaca,* 65 F.3d at 474. Cudd's termination was effective January 1, 1995. Thus, the Court must look to the established law as of January 1, 1995 to determine if "the contours of the right [were] sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

As discussed *supra,* determining whether political allegiance is an appropriate requirement for a government position involves a case specific inquiry. *See Branti,* 445 U.S. at 518, 100 S.Ct. at 1294 ("[I]t is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered."). Because the outcome affects vital constitutional rights, the analysis must occur at an individualized level with an approach that balances the employee's First Amendment interest in freedom of speech and expression against the government's interest in maintaining effective government. *Noyola v. Texas Dep't of Human Resources,* 846 F.2d 1021, 1025 (5th Cir. 1988). Concededly, the consequence of this subjective approach is that "[t]here will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Id.*

Although the inquiry is case-specific and requires a subjective analysis of the facts, Plaintiff's First Amendment right may still be "clearly established" if, at the time she was terminated, applicable and analogous case precedent gave Aldrich sufficient notice that his actions would be a violation of Plaintiff's rights. However, no such case precedent existed in the Fifth Circuit or in the Supreme Court at the time of Plaintiff's termination. In fact, the state of the law regarding patronage terminations was not clearly established with respect to any positions except that of deputy sheriffs, where the Fifth Circuit has clearly held that the *Elrod–Branti* exception does not apply. *Vojvodich v. Lopez,* 48 F.3d 879 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 169, 133 L.Ed.2d 111 (1995); *Matherne v. Wilson,*

---

2. Although Aldrich denies that he fired Plaintiff because of her political activities, his Motion for Summary Judgment is based on the premise that, even if she was fired for her political activities, her dismissal did not clearly violate her First Amendment rights. The fact question of whether she was fired for political reasons is not before

the Court at this stage. If the Court found that Cudd's First Amendment protection was not outweighed by the interests of the government in this case, then the question of why she was dismissed would become relevant. That question is probably one that could not be determined on summary judgment.

851 F.2d 752 (5th Cir.1988); *see Brady v. Fort Bend County,* 58 F.3d 173, 176 (5th Cir.1995) (recognizing that Fifth Circuit law on patronage dismissals is clearly established for qualified immunity purposes only in cases regarding the discharge of deputy sheriffs). Moreover, the Court has held today that the position of assistant district attorney is one that should be subject to an exception to the First Amendment's ban on political patronage dismissals. The Court has concluded that, considering applicable case law (most of which existed at the time of Plaintiff's termination), Plaintiff's substantive claims against Brazoria County have no merit. In light of the paucity of Fifth Circuit case law on patronage dismissal of attorneys existing in early 1995, and other case law establishing that First Amendment protection does not extend to such positions, the Court finds that reasonable public officials could have differed on the lawfulness of Aldrich's actions. *See Gunaca,* 65 F.3d at 475 (county district attorney who fired an investigator was entitled to qualified immunity because neither the Fifth Circuit nor the Supreme Court had addressed sufficiently analogous issues).

Despite the absence of an assistant prosecutor's clearly established First Amendment right to be free from patronage dismissals, Plaintiff argues that Aldrich is not entitled to qualified immunity because the applicable case law established that a public employee can not be fired for political reasons unless the employee's activities in some way adversely affect the government's ability to provide services. Had Aldrich inquired as to Plaintiff's actual duties, Plaintiff argues, he would have realized that she had no discretion and that her activities did not adversely affect any governmental interests. Plaintiff alleges, somewhat disingenuously,[3] that her duties were "largely ministerial" such that her termination should not be subject to the *Elrod–Branti* exception, and that this would have been "readily apparent" to Aldrich had he inquired as to her duties.

Plaintiff's argument, however, is fatally flawed in two respects. First, even assuming that Aldrich had a duty to inquire about her position, the relevant factors in his analysis would have been the duties inherent in her position, not the duties she actually performed. *See supra* discussion in subsection B.; *Gordon v. County of Rockland,* 110 F.3d 886, 891 (2d Cir.1997).

Second, and more importantly, the inquiry into qualified immunity is an objective one: the Court must determine what a reasonable public official would have understood as clearly established law. Plaintiff attempts to manipulate this objective, reasonable person standard into a subjective one by requiring the reasonable public official to determine whether, considering the duties actually performed by the employee, the position would fit into a confidential or policymaking role such that the *Elrod–Branti* exception would apply. According to Plaintiff's argument, this reasonable public official must perform the case-specific balancing which a court would perform, and predict the outcome that a court would reach, in order to determine whether his actions were proper. Plaintiff's argument misses the mark, and seeks to impose a duty upon Defendant that does not exist in law. It is the constitutional right *itself* that must be clearly established, not the analysis that courts employ to determine whether a constitutional right exists. The Plaintiff would impose on public officials a duty to master existing constitutional jurisprudence and correctly predict the outcome of the complex, subjective, and often unpredictable balancing tests used by the federal judiciary. Being acutely aware of the difficulty of such an analysis, the Court flatly refuses to subject the "reasonable public official" to this arduous task. The reasonable public official must be allowed to rely on clearly established constitutional law, not be forced to correctly apply constitutional legal analysis.[4]

---

3. *See supra* discussion in subsection B.

4. Even assuming that Plaintiff's argument imposed the proper requirements on public officials, in this case the argument is unavailing because the Court has concluded that Plaintiff was not entitled to First Amendment protection from political patronage termination. Thus, even if he had been required to do so, Aldrich would have guessed right.

Based on the foregoing, the Court concludes that Defendant Aldrich is entitled to qualified immunity because Plaintiff, as an assistant district attorney, did not have a clearly established constitutional right to First Amendment protection from political patronage termination at the time she was fired. Accordingly, Defendant Aldrich's Motion for Summary Judgment is hereby **GRANTED,** and all claims against Defendant Aldrich in his individual capacity are **DISMISSED WITH PREJUDICE.**

## IV.  CONCLUSION

For the foregoing reasons, Defendant John Willy's Motion to Dismiss for Failure to State a Claim is hereby **GRANTED** and all such claims are **DISMISSED WITH PREJUDICE.** The Motions for Summary Judgment of Defendants Brazoria County and Jerome Aldrich and John Willy in their official capacities, and of Defendant Jerome Aldrich in his individual capacity, are also hereby **GRANTED,** and all such claims against all Defendants are **DISMISSED WITH PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. The parties are **ORDERED** to file no further pleadings before this Court, particularly including motions to reconsider and the like, unless supported by compelling new evidence not available at the time of the submission of the instant pleadings. All further relief shall be sought in the United States Court of Appeals for the Fifth Circuit.

**IT IS SO ORDERED.**