IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30028
Summary Calendar
_____

GREGORY P. AUCOIN,

                                        Plaintiff - Appellee,


                          v.


PHIL HANEY, Individually and in his capacity as
District Attorney for the 16th Judicial District Court,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette Division
_____

October 1, 2002

Before JOLLY, HIGGINBOTHAM, and PARKER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     Phil Haney, the District Attorney for the Sixteenth Judicial
District Court of Louisiana, appeals the district court's denial of
qualified immunity to him from this suit brought by an assistant
district attorney.  Gregory P. Aucoin sued Haney under 42 U.S.C. §
1983, alleging a political discharge that violated his First
Amendment rights.  Specifically, Aucoin claimed that he was fired
by Haney because he was supporting Haney's political opponent in

the upcoming District Attorney election.  We join all other circuits that have considered this question, and hold that Aucoin has failed to demonstrate that Haney violated his First Amendment right to free speech.  We therefore REVERSE the district court's denial of summary judgment to Haney and REMAND for further proceedings that are not inconsistent with this opinion.

I

Haney served as an Assistant District Attorney in the Sixteenth Judicial District Court for twenty years.  In the spring of 1999, Bernard Boudreaux, the District Attorney for the Sixteenth Judicial District Court, announced that he intended to resign his post effective January 19, 2000, and that he would be supporting Haney as his successor.  In the fall of 1999, Boudreaux proved himself a real political friend of Haney.  He elevated Haney to the position of First Assistant District Attorney, which positioned Haney for appointment as the Interim District Attorney upon Boudreaux's resignation.  Haney announced that he planned to run in the upcoming election for District Attorney, which was scheduled for October 6, 2000.

In June or July of 1999, Aucoin made a political decision that was not in his best interests.  He began to openly support Haney's declared opponent in the District Attorney race, Leon Roy.  Aucoin asserts that he only worked on behalf of Roy during his personal time.  In late 1999, Boudreaux, again flying Haney's colors, met with all the Assistant District Attorneys and informed them that he

2

expected them to support Haney.  Boudreaux went a step further and put a personal squeeze on Aucoin.  On December 7, 1999, he told Aucoin that he should support Haney or resign.  Aucoin declined to do either, but said that he would continue to fully comply with the duties of his position.  Boudreaux wisely did not fire Aucoin.

Next, Haney, who had now been named First Assistant District Attorney, moved into the picture.  Haney met with Aucoin on January 14, 2000, and told him that he would be fired if he did not support his candidacy.  Aucoin told Haney that he would support him in his administration of the office of District Attorney, but, standing his ground, said that he would not support him politically.  Haney, who was apparently prepared for this response, handed a letter to Aucoin, dated January 13, 2000, in which he conveyed his intention not to re-commission Aucoin as an Assistant District Attorney once Haney was sworn in as Interim District Attorney on January 19.  In the letter to Aucoin, Haney stated in part:

> It is my understanding that you did not wish to support my administration of the Office of District Attorney.  As an Assistant District Attorney, you are in a position of authority, supervision, and responsibility and are responsible for implementation of policies in my administration.  Since you are unwilling to conscientiously and wholeheartedly support my administration of this office, I have no alternative than to issue commissions to all current Assistant District Attorneys with the exception of yourself.

Haney "fired" Aucoin on January 14, effective January 19, 2000.

II

3

Aucoin filed this suit under 42 U.S.C. § 1983 against Haney in his individual and official capacities, alleging a violation of his First Amendment rights. Haney filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), which the district court denied. After the parties conducted some discovery, Haney filed a motion for summary judgment arguing that all of Aucoin's claims should be dismissed. Alternatively, Haney argued that he was entitled to qualified immunity from suit in his individual capacity. The district court denied Haney's motion in its entirety, finding that disputed issues of material fact existed. The only issue before us now in this interlocutory appeal is whether the district court erroneously denied Haney's motion for summary judgment on qualified immunity grounds.

## III

We review de novo the denial of a public official's motion for summary judgment based on qualified immunity. Nerren v. Livingston Police Dept., 86 F.3d 469, 472 (5th Cir. 1996) (citing Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994)). Summary judgment is inappropriate if there is a genuine issue of material fact or if the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). For the purposes of a summary judgment determination, all fact questions are viewed in the light most favorable to the nonmovant. Stults v. Conoco, Inc., 76 F.3d 651, 654 (5th Cir. 1996). Here, the district court denied summary

4

judgment because it found that there were genuine issues of material facts.

Aucoin argues that the district court's denial of summary judgment on the qualified immunity issue, based on its finding of disputed material facts, is not an appealable final order. See Johnson v. Jones, 515 U.S. 304, 319 (1995) ("[W]e hold that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a "genuine" issue of fact for trial.") However, "[m]ore recently, in Behrens v. Pelletier, [516 U.S. 299 (1996),] the Supreme Court clarified that Johnson 'permits [the defendant] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of 'objective legal reasonableness.' Thus, in Behrens, the district court's determination that 'material issues of fact remain' did not preclude appellate review." Nerren v. Livingston Police Dept., 86 F.3d 469, 472 (5th Cir. 1996). We further stated:

> In the wake of Behrens, the Johnson modification (if any) on appellate review applies only when "what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred." Thus, we cannot review the "evidence sufficiency issue" (i.e., whether the nonmovant presented sufficient summary judgment evidence to create a dispute of fact). But we retain interlocutory jurisdiction to "take, as given, the facts that the district court assumed when it denied summary judgment"

5

and determine whether these facts state a claim under clearly established law.

Id. (citations omitted).

Haney argues on appeal that even if all of Aucoin's factual allegations are taken as true, he is still entitled to qualified immunity. Because we will only take into account undisputed facts in considering the constitutional issues presented in this appeal, we have appellate jurisdiction, under Nerren, to review whether the district court erred in denying Haney qualified immunity.

IV

Taking the facts asserted by Aucoin as true, the issue thus is narrowed to whether the law was clearly established that Haney was constitutionally prohibited from firing Aucoin because Aucoin refused to support Haney politically in his campaign for District Attorney; if the law was not clearly established, then the district court erred, and Haney is entitled to qualified immunity and the dismissal of the complaint against him in his individual capacity.

In addressing qualified immunity, we proceed in three steps. First, we ask whether the plaintiff has alleged a violation of a constitutional right. Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Second, we ask whether the constitutional right was clearly established at the time of the alleged violation. Id. at 474. If we answer yes to both questions, we then ask whether the official's conduct was objectively reasonable in the light of that established constitutional right.

6

Aucoin's constitutional allegation is that Haney deprived him of his First Amendment right to free speech.[1]  In Elrod v. Burns, 427 U.S. 347, 357 (1976), the Supreme Court held that because "political belief and association constitute the core of those activities protected by the First Amendment," id. at 356, the practice of patronage dismissals "clearly infringes First Amendment interests." Id. at 360.  Yet, because of the political position he held as an Assistant District Attorney, we must further consider whether, in the context of the undisputed facts of this case, Aucoin has alleged a violation of his constitutional rights.

A plurality of the Court stated that patronage dismissals of those in policymaking positions would be permissible in some cases in order to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration . . . ." Id. at 367.  In Branti v. Finkel, 445 U.S. 507, 518 (1980), the Supreme Court held that if "an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interests in maintaining governmental effectiveness and efficiency."  Id. at 517.  This circuit has stated that "by January 1992 at the latest, the law was [] clear that, regardless of whether an employee is a policymaker, a public

_____

[1]Aucoin's complaint also alleged that Haney deprived him of his right to vote, but neither party has raised this issue before this court.  We therefore will not address it.

7

employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's ability to provide services." Vojvodich v. Lopez, 48 F.3d 879, 887 (5th Cir. 1995) (citation omitted).

In Elrod, the Court stated:

> No clear line can be drawn between policymaking and nonpolicymaking positions. . . . An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty "justification is a matter of proof, or at least argument, directed at particular kinds of jobs."

Elrod, 427 U.S. at 367-68 (citation omitted).

This court has stated that policymakers may be "public employees whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." Stegmaier v. Trammell, 597 F.2d 1027, 1035 (5th Cir. 1979) (citing Johnson v. Bergland, 586 F.2d 993 (4th Cir. 1978); Newcomb v. Brennan, 558 F.2d 825 (7th Cir.), cert. denied, 434 U.S. 968 (1977)). "A policymaker also may be an individual who "controls or exercises a role in a decision making process as to the goals and general operating procedures of (an) office". Id. (citing Ramey v. Harber, 431 F.Supp. 657, 666 n.

8

15 (W.D. Va. 1977), <u>aff'd in part & rev'd in part on other grounds</u>, 589 F.2d 753 (4th Cir. 1978), <u>cert. denied</u>, 442 U.S. 910 (1979)). Confidential employees also may be subject to patronage dismissals; one is a confidential public employee if "he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e. g., as a private secretary to a policymaker." <u>Id.</u> at 1039 (citation omitted).

In <u>Branti</u>, the Court explained that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." <u>Branti</u>, 445 U.S. at 518.

In <u>Connick v. Myers</u>, 461 U.S. 138 (1983), the Supreme Court expressly adopted the balancing analysis first recognized in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968), in order to make a determination as to the appropriateness of requiring a particular political affiliation. Under <u>Connick</u> and <u>Pickering</u>, the court "is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" <u>Connick</u>, 461 U.S. at 142 (alteration in original) (quoting <u>Pickering</u>, 391 U.S. at 568).

9

The employee bears the burden of establishing that his speech or activity related to a matter of public concern. There is no doubt that campaigning for a political candidate relates to a matter of public concern. See Vojvodich, 48 F.3d at 884-85; Coughlin v. Lee, 946 F.2d 1152, 1158 (5th Cir. 1991). Once the plaintiff demonstrates a matter of public concern, the employer then must establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity. Vojvodich, 48 F.3d at 885 (citing United States Dep't of Justice v. Federal Labor Relations Auth., 955 F.2d 998, 1005 (5th Cir. 1992)). We have noted that in "cases involving public employees who occupy policymaker or confidential positions . . . the government's interests more easily outweigh the employee's (as a private citizen)." Kinsey v. Salado Indep. Sch. Dist., 950 F.2d 988, 994 (5th Cir. 1992) (citing Rutan v. Republican Party of Ill., 497 U.S. 62 (1990)), cert. denied, 504 U.S. 941 (1992).

Although we have not addressed the Elrod-Branti exception in the precise context of assistant district attorneys, we have applied the exception to permit political dismissals of employees in a number of other positions. See, e.g., Kinsey, 950 F.2d at 995 (school superintendent who occupied a confidential and policymaking position was within the exception); Soderstrum v. Town of Grand Isle, 925 F.2d 135, 141 (personal secretary to police chief was confidential employee); Stegmaier v. Trammell, 597 F.2d 1027, 1040

10

(5th Cir. 1979) (deputy circuit clerk was "confidential employee"), but see, e.g., Click v. Copeland, 970 F.2d 106, 108 (5th Cir. 1992) (noting that the deputy positions of civil warrants officer and chief criminal district court bailiff did not involve policymaking); Matherne v. Wilson, 851 F.2d 752, 761 (5th Cir. 1988) (non-policymaking deputy sheriff could not be terminated on basis of political activity).

We have applied this balancing test to a claim of qualified immunity for the firing of an investigator in a county district attorney's office. In Gunaca v. State of Texas, 65 F.3d 467, 473 (5th Cir. 1995), Gunaca was a former investigator in the county district attorney's office who sued the county district attorney, Jaime Esparza, alleging that the district attorney refused to reappoint him in part because Gunaca had supported the district attorney's opponent in the primary election. Gunaca alleged that this violated his First Amendment rights. Id. We held:

> The right that Gunaca asserts in his complaint and summary judgment response was not clearly established at the time Esparza allegedly violated it because neither the Fifth Circuit nor the Supreme Court had addressed the issue of political patronage in the hiring or firing of investigators in district attorneys' offices, and neither had addressed an issue sufficiently analogous that a reasonable official would understand from its resolution that it is a First Amendment violation to dismiss or to not hire an investigator on the grounds that the investigator supported the campaign of the official's opponent . . . . Because reasonable public officials could have differed on the lawfulness of Esparza's actions at the time they occurred, Esparza is entitled to qualified immunity.

Id. at 475 (citation omitted).

11

The other circuits that have addressed the Elrod-Branti exception in the context of government attorney dismissals, whether for assistant district attorneys or other government attorneys, have held that these attorneys occupy positions requiring political loyalty and are not protected from political dismissals under the First Amendment. See, e.g., Butler v. New York State Dept. of Law, 211 F.3d 739, 741 (2d Cir. 2000) (Deputy Bureau Chief of the Litigation Department at the New York State Department of Law); Biggs v. Best, Best & Krieger, 189 F.3d 989 (9th Cir. 1999) (attorney with private law firm that performed services of city attorney); Bavaro v. Pataki, 130 F.3d 46, 47 (2d Cir. 1997) (associate counsel and assistant counsel in the New York State Department of Health, Division of Legal Affairs, Bureau of Professional Medical Misconduct); Fazio v. City & County of San Francisco, 125 F.3d 1328 (9th Cir. 1997) (assistant district attorney); Gordon v. County of Rockland, 110 F.3d 886, 890-892 (2d Cir.) (assistant county attorneys), cert. denied, 522 U.S. 820 (1997); Monks v. Marlinga, 923 F.2d 423 (6th Cir. 1991) (assistant prosecuting attorneys); Williams v. City of River Rouge, 909 F.2d 151 (6th Cir. 1990) (city attorney); Livas v. Petka, 711 F.2d 798 (7th Cir. 1983) (assistant state attorney to a public prosecutor); Mummau v. Ranck, 687 F.2d 9 (3d Cir. 1982) (assistant district attorney); Ness v. Marshall, 660 F.2d 517 (3d Cir. 1981) (city solicitor and assistant city solicitor); Newcomb v. Brennan, 558 F.2d 825 (7th Cir.) (deputy city attorney), cert. denied, 434 U.S.

12

968 (1977); <u>Bauer v. Bosley</u>, 802 F.2d 1058 (8th Cir. 1986) (staff legal assistant in office of clerk of circuit court), <u>cert. denied</u>, 481 U.S. 1038 (1987). A number of district courts in the Fifth Circuit also have applied this exception to assistant district attorneys and other government attorneys. <u>See, e.g.</u>, <u>Cudd v. Aldrich</u>, 982 F. Supp. 463 (S.D. Tex. 1997) (assistant district attorney); <u>Parker v. Barthelemy</u>, 1992 U.S. Dist. LEXIS 7109 (E.D. La.) (city attorney); <u>Finkelstein v. Barthelemy</u>, 678 F.Supp. 1255 (E.D. La. 1988) (assistant city attorney).

Under Louisiana law, an assistant district attorney is vested with broad discretionary powers. Under the Louisiana Constitution, "a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury." La. Const. Art. 5, § 26(B). The district attorney or his designated assistant also represents the state in all civil actions. La. Rev. Stat. § 16:1(B). The district attorney serves as counsel for "police juries, parish school boards, and city school boards within their respective districts and of every state board or commission domiciled therein . . . ." <u>Id.</u> § 16:2(A). The district attorney for each judicial district appoints the assistant district attorneys. <u>Id.</u> § 16:51(A). "Assistant district attorneys serve at the pleasure of and may be removed at the discretion of the district attorney." <u>Id.</u> § 16:52(B). The Louisiana Supreme Court

13

has noted "the well-established general principle that assistants may perform the duties of officials under whom they serve . . . ." State v. Refuge, 300 So.2d 489, 490 (La. 1974). Further, the actions of an assistant district attorney can bind the state. State v. Tanner, 425 So.2d 760, 763 (La. 1983) (citing Refuge, 300 So.2d 489).

Aucoin testified in his deposition, a copy of which was attached to Haney's motion for summary judgment, that he had great discretion in handling the misdemeanor docket in St. Mary Parish, for which he was responsible. He stated that he handled his job on his own and exercised his judgment and discretion on a daily basis, without much contact with the district attorney. He also admitted that he was a visible representative of the district attorney's office in Morgan City, in St. Mary parish. The primary office of the district attorney was located in New Iberia.

Given Aucoin's broad duties and the important policymaking role of a district attorney and his designated assistants under Louisiana law, we hold that an assistant district attorney falls within the Elrod-Branti policymaker exception. However, our inquiry does not end here. The summary judgment evidence also must show that "party affiliation is an appropriate requirement for effective performance of the public office involved." Branti, 445 U.S. at 518.

It is clear to us that the effective performance of the office of district attorney requires political loyalty from district

14

attorneys.  Under Louisiana law, the district attorney serves as a representative of the state and has important policymaking powers. Assistant district attorneys are the representatives of the District Attorney, and perform all the functions that he or she performs.  It is therefore essential that the District Attorney have trust and confidence in the assistant district attorneys, and that the District Attorney has the loyalty of the assistant district attorneys.  It is clear from the summary judgment evidence that Haney did not have the loyalty, confidence or trust of Aucoin.

We therefore hold that, based on the undisputed facts, Aucoin has failed to demonstrate that Haney violated his First Amendment right to free speech.  Haney therefore is entitled to qualified immunity.

As a final observation, we should note that Aucoin points to the fact that Haney was not yet the District Attorney or the Interim District Attorney when he "fired" Aucoin.  Rather, he was a co-worker of Aucoin's who was to become Interim District Attorney in five days.  Aucoin argues that, therefore, Haney did not yet have an administration with which Aucoin's political activities could interfere.  The district court found this to be important. However, we think that this distinction is without significance. One who knows he is about to become Interim District Attorney must begin to assemble his staff before he actually assumes the position.  Aucoin's support of Haney's political opponent and lack of support for Haney were already clearly known to Haney, and were

15

not in dispute.  We note that in <u>Cudd v. Aldrich</u>, 982 F.SUpp. 463 (S.D. Tex. 1997), the district court held that the <u>Elrod-Branti</u> exception applied to assistant district attorneys, and granted qualified immunity to the district attorney who was elected to begin serving in 1995 and who informed the plaintiff assistant district attorney on December 24, 1994 that there was no position available for her effective January 1, 1995.  Similarly here, Haney's decision not to renew Aucoin's commission as an assistant district attorney upon Haney becoming Interim District Attorney is covered by the qualified immunity doctrine.

V

For the stated reasons, the district court erred in denying summary judgment to Haney on his qualified immunity claim.  We hold that Haney is entitled to qualified immunity for his conduct here, and accordingly we REVERSE the district court's denial of qualified immunity and REMAND for such further proceedings that may be appropriate and that are not inconsistent with this opinion.

REVERSED and REMANDED.

16