**Conrad NOYOLA, Plaintiff-Appellee,**

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES, et al., Defendants-Appellants.**

**No. 87–2669.**

United States Court of Appeals, Fifth Circuit.

June 15, 1988.

Edwin N. Horne, James C. Todd, Jim Mattox, Austin, Tex., for defendants-appellants.

Larry Watts, Houston, Tex., for plaintiff-appellee.

Before GARWOOD and JONES, Circuit Judges, and FISHER[*], District Judge.

EDITH H. JONES, Circuit Judge:

Following the careful pruning of Appellee Noyola's complaint and amended complaint by the district court, there is one issue open for review. The question is whether Appellants, Elizondo, Westbrook and Rodriguez, employees of the Texas Department of Human Resources (TDHR), are entitled to qualified immunity in connection with Noyola's dismissal from TDHR in 1981. The district court denied summary judgment to Appellants on this issue. We reverse and render in their favor.

## I.

## BACKGROUND

Noyola worked for TDHR in South Texas as a welfare services technician from 1974 until 1981. After being terminated, he pursued a grievance proceeding within the department unsuccessfully. It is significant that the record does not evidence any claim by Noyola before TDHR that he was terminated for exercising first amendment rights.

He next challenged the firing by means of a federal lawsuit initiated in 1983, in which he asserted, *inter alia*, that he was terminated in violation of his first amendment rights. Following procedural maneuvering not material to this opinion, Appellants, who had been sued in their individual

[*] District Judge of the Eastern District of Texas, sitting by designation.

capacities, moved for summary judgment to establish their qualified immunity from suit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Appellants' affidavits denied that the termination had anything to do with Noyola's "speaking out" on "matters of public concern." *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In Noyola's response to the summary judgment motion, the only portion that may be construed to evidence a matter arguably related to the exercise of free speech protected by the first amendment is as follows:

> Plaintiff Noyola made suggestions to Defendant Elizondo regarding efficient and customary procedure for handling a caseload. ... Every worker in the Lower Valley Unit had one case load. I had two case loads ...

In the accompanying affidavit, Noyola elaborated:

> I suggested to Mrs. Elizondo that to better deliver services on [sic] a more timely and efficient manner to our clients, that perhaps the case load could be distributed on a more equitable basis. Her sarcastic reply was, 'What's the matter? I thought you were supposed to be Super Worker?' At this time, she again retaliated and imposed an area which composed [sic] of approximately 250 cases on me. I was now to work the largest case load in a three-county geographic area which involved 13 different communities.

The district court, evaluating this language, concluded that it was unable to determine whether Noyola's speech could have been protected by the First Amendment, and it consequently denied Appellants' motion for summary judgment founded on that defense.

## II.

## ANALYSIS

The Appellants may seek interlocutory review of the district court's decision denying qualified immunity. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Our analysis is limited to two matters. If the district court erred in concluding that Noyola's speech touched upon "a matter of public concern," then no first amendment rights were at stake in his termination and the Appellants' defense must prevail. Unlike the district court, we conclude that Noyola's "speech" was not constitutionally protected. Second, if the first amendment rights were not "clearly established" at the time Noyola was terminated,[1] Appellants may defend on the basis of qualified official immunity from suit. We resolve this issue in their favor also.

■ We first observe that two and one-half years passed between the filing of Noyola's complaint and his affidavit in response to Appellants' motion for summary judgment. Noyola could not, nor did he, contend to the district court that he lacked a fair opportunity to develop his "first amendment" claim. *See* FED.R.CIV.P. 56(f). The claim in fact is uniquely dependent upon his evidence concerning the circumstances and content of the allegedly protected speech. We are in these circumstances bound by the Supreme Court's determinations that when the parties have been given adequate opportunity for discovery, a party bearing the burden of proof must offer evidence sufficient to raise a genuine issue of material fact on the elements of his case or suffer an adverse summary judgment. FED.R.CIV.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ While it is true that a state may not discharge an employee for exercising his right to free speech on matters of public concern, *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), the employee making this contention must

---

1. In *Harlow v. Fitzgerald,* the Supreme Court encouraged the granting of summary judgment in public official immunity cases if the record shows that the defendants did not knowingly violate any constitutional right that was "clearly established" at the time of their conduct. 457 U.S. at 818, 102 S.Ct. at 2738.

establish that his speech addressed a matter of public concern in the first place. *Rankin,* — U.S. at —, 107 S.Ct. at 2897. The speech must be considered in its context on the record as a whole. *Connick v. Myers,* 461 U.S. at 147–48, 103 S.Ct. at 1690. The protected status of the speech is an issue of law for the court, but subsidiary fact issues may require resolution by a jury. *See Simon v. City of Clute, Texas,* 825 F.2d 940, 943 (5th Cir.1987).

■ Noyola's affidavit, quoted above, furnishes the sole clue as to the content, nature and circumstances of his allegedly protected speech.[2] That excerpt reflects a conversation between Noyola and his supervisor that may suggest the existence of a large welfare case load. It definitely implies that Noyola urged a realignment of his own case load. It was made to his direct supervisor with whom he had daily contact, and it was made, according to Appellee's affidavits, at a time when his level of performance was being questioned. No one else is even alleged to have heard the speech. Nothing in this minimalist glimpse of Noyola's conversation or conversations suggests that the speech was anything other than the airing of an internal grievance with his supervisor. The record before us also indicates that Noyola was speaking to his supervisor primarily as an employee rather than in his role as a citizen. *See Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). We must conclude that no first amendment issue is raised by this "speech."

Ample authority from our Court supports our conclusion. This court recently decided *Page v. DeLaune,* 837 F.2d 233 (5th Cir.1988), and held that a telephone conversation between two state employees in which they decided to bypass normal bureaucratic communication channels "is clearly a personnel matter internal to the program, not a matter of public concern." 837 F.2d at 238. Reviewing past circuit

and Supreme Court precedent, *Page* further noted that the first amendment had been held not to protect public employees who "spoke out" concerning the transfer policies and morale problems of a district attorney's office (*Connick,* 461 U.S. at 148–49, 103 S.Ct. at 1690–91); the personnel policies of university police (*Terrell v. University of Texas System Police,* 792 F.2d at 1362–63); an unfavorable employee evaluation (*Day v. South Park Independent School District,* 768 F.2d 696, 700–01 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986)); and isolated disputes among doctors and other professionals at a public hospital (*Davis v. West Community Hospital,* 755 F.2d 455, 460–61 (5th Cir.1985)). *Id.* This case falls squarely within the boundaries of such prior authority. Because the First Amendment does not protect the speech at issue, we hold that even if Noyola was terminated for making this speech (an issue that we need not analyze), his termination did not violate any constitutional right. Consequently, Appellants could not have violated any "clearly established constitutional rights," and they are protected by qualified immunity from suit.

### III.

### QUALIFIED IMMUNITY

■ Even if our analysis of the protected status of Noyola's speech should be in error, the TDHR officials were nonetheless entitled to qualified immunity for a different reason. Qualified immunity is a defense available to public officials performing discretionary functions "... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The defense fixes an objective standard for an official's behavior. By allowing the court to determine whether the law allegedly violated by the official was "clearly established" at the time the challenged action occurred, a test for qualified

---

2. We may not rely on the allegations of Noyola's amended complaint, because the case was decided on a motion for summary judgment.

Thus, Noyola's frequent references in his brief to the allegations of his amended complaint are inappropriate.

immunity should permit insubstantial claims to be resolved by summary judgment. *Id.*

The Supreme Court recently expanded upon the meaning of a right "clearly established" for purposes of qualified immunity:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth* ], 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12 [86 L.Ed.2d 411]; but it is to say that in the light of preexisting law the unlawfulness must be apparent (citations omitted).

*Anderson v. Creighton,* —— U.S. at ——, 107 S.Ct. at 3039. No Supreme Court case has yet explored the extent of qualified immunity available in first amendment employee discipline cases. Hence, we apply the governing immunity principles in the absence of direct Court guidance.

Determining whether a public employee has been discharged in violation of his first amendment free speech right utilizes case-by-case inquiry on two levels. *Connick v. Myers, supra,* decided by the Supreme Court the same year that Noyola was discharged, requires separate fact-specific consideration of (1) whether the speech is constitutionally protected and (2) if so, whether the discharge can be justified in order for the public office properly to perform its function. 461 U.S. at 148–50, 103 S.Ct. at 1691. The Court last year reiterated that lower courts must balance the first amendment interest in protecting an employee's freedom of expression against the government's interest in maintaining discipline and efficiency in the work place. *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). Our own court, after enumerating certain disadvantages of case-by-case balancing of first amendment employee rights, nevertheless explained that "individualized balancing seems preferable to a predictable but inflexible categorical approach ... because of the variety of circumstances in which public employees speak." *Gonzalez v. Benavides,* 774 F.2d 1295, 1303 (5th Cir. 1985), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986).

One consequence of case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's first amendment rights. There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated "clearly established" constitutional rights. *Connick* and *Rankin* exemplify the difficulty of delineating any bright-line constitutional rule that might furnish a test for denying qualified immunity in such actions. *Connick* held constitutionally unprotected a questionnaire distributed within a district attorney's office that inquired, *inter alia,* whether the employees thought the office was politically influenced and whether it was properly performing its job. In *Rankin,* however, the Court held that a derogatory personal remark about President Reagan, uttered in a private intra-office conversation, *was* constitutionally protected.[3] *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Our recent conclusion in a discussion of the qualified immunity of child protective service workers, upon adaption, holds true here as well: "... reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know just what conduct was prohibited." *Hodorowski v. Ray,* 844 F.2d 1210, 1217 (5th Cir.1988) .

Noyola's case, viewed in the light most favorable to him, remains one of nuance and demonstrates the need to recognize Appellants' defense of qualified immunity. *If* he intended to advise his supervisor that the welfare department was unable properly to serve its clients because of the social workers' large individual case loads, the advice incorporates elements of public poli-

---

**3.** For examples of the variety of possible results and cases in our own circuit, *see, e.g., Duke v. North Texas State University,* 469 F.2d 829 (5th Cir.1973); *McBee v. Jim Hogg County, Tex.,* 730 F.2d 1009 (5th Cir.1984) (en banc); *Neubauer v. City of McAllen, Texas,* 766 F.2d 1567 (5th Cir. 1985).

cy and employee self-interest. Neither the protected status of Noyola's speech nor his right to remain employed by TDHR following such speech could have been facially apparent to Appellants. No Fifth Circuit case as of 1981 had found a first amendment violation on facts like these.[4] Hence, even if Noyola's "speech" was protected by the first amendment, we paraphrase *Anderson* and hold that neither the "contours" of Noyola's rights were so clearly outlined nor was the "unlawfulness" of terminating Noyola so "apparent" that Appellants should forfeit their qualified immunity. *Anderson,* ── U.S. at ──, 107 S.Ct. at 3039.

The decision of the district court is reversed, and the cause is remanded with instruction to enter judgment for Appellants.

REVERSED and REMANDED with instructions.

---

[4]. The most similar cases which had been decided at that time were still wholly distinguishable on the facts. *See Ayers v. Western Line Consol. School Dist.,* 691 F.2d 766 (5th Cir.1982) (school teacher's private criticism to school principal of school's desegregation efforts held to be protected speech); *Van Ooteghem v. Gray,* 654 F.2d 304 (5th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982) (county treasury employee's First Amendment rights were violated when he was dismissed because of his intention to make a public speech on civil rights for homosexuals); *Kingsville Independent Sch. Dist. v. Cooper,* 611 F.2d 1109 (5th Cir.1980) (controversial classroom discussions conducted by teacher in connection with teaching post-Civil War American history were protected by the First Amendment because they did not "over balance [the teacher's] usefulness as an instructor"). *See also Allaire v. Rogers,* 658 F.2d 1055 (5th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982), *reh'g denied,* 457 U.S. 1126, 102 S.Ct. 2949, 73 L.Ed.2d 1343 (1982); *Downing v. Williams,* 645 F.2d 1226 (5th Cir.1981).