CLASSROOM TEACHERS OF DALLAS/TEXAS STATE TEACHERS ASSOCIATION/NATIONAL EDUCATION ASSOCIATION; **Clara Garrett; Gail Ollie; and Pauline Dixon,** Plaintiffs,

v.

**DALLAS INDEPENDENT SCHOOL DISTRICT; Manuel Medrano; Dr. James Hughey; and Mary Roberts,** Defendants.

No. Civ.A.3:98–CV–2618–L.

United States District Court,
N.D. Texas,
Dallas Division.

April 6, 2001.

Truman Weldon Dean, Jr., Texas State Teachers Association, Austin, TX, for Plaintiffs.

Eric Vaughn Moye, Vial, Hamilton, Koch & Knox, Dallas, TX, James M. Welch, Joel E. Geary, Brown McCarroll, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendants' Motion for Judgment on the Pleadings, filed April 5, 1999. Upon careful consideration of the motion, response, reply, the pleadings on file in this case, and the applicable law, the court **grants in part** and **denies in part** the motion for the reasons stated herein.

### I. *Factual and Procedural Background*[1]

This lawsuit concerns allegations of retaliation against government employees for union activities. Plaintiffs Clara Garrett

---

1. On a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiffs' factual allegations as true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The same standards apply on a Rule 12(c) motion for judgment on the pleadings.

("Garrett"), Gail Ollie ("Ollie"), and Pauline Dixon ("Dixon") are teachers currently or formerly employed by Defendant Dallas Independent School District ("DISD"). All three of the teachers are active members of Plaintiff Classroom Teachers of Dallas ("CTD"), a non-profit organization affiliated with the Texas State Teachers Association ("TSTA") and the National Education Association ("NEA"). CTD serves as a union representing teachers in DISD.

The First Amended Complaint and Response to Qualified Immunity Defense Asserted for Individual Defendants ("Complaint") alleges several different confrontations between Defendant Manuel Medrano ("Medrano"), the Principal of Florence Middle School ("Florence"), and Plaintiffs Garrett, Ollie, and Dixon, all of whom worked at Florence. The alleged actions by Medrano of which Plaintiffs complain include threats, intimidation, harsh comments about union membership or activities, refusal to grant "professional leave time" for attending a TSTA convention, and harassment. Ollie was terminated, and Medrano proposed that Garrett be terminated.[2] Although Medrano threatened to terminate Dixon, no such action was taken. Garrett, Ollie, and Dixon took various actions in response to the alleged actions by Medrano, including filing a grievance and complaining to Defendants Mary Roberts ("Roberts"), the District 1 Superintendent and Medrano's supervisor, and Dr. James Hughey ("Hughey"), the General Superintendent of DISD. Despite the complaints, Roberts and Hughey took no actions to stop or prevent Medrano's conduct.

Plaintiffs filed this lawsuit on November 6, 1998, against Medrano, Roberts, and Hughey (collectively, the "Individual Defendants"), in their official and individual capacities, and DISD. The lawsuit asserts four causes of action: 1) for a deprivation of civil rights pursuant to 42 U.S.C. § 1983, specifically Plaintiffs' right to freedom of association under the First and Fourteenth Amendments to the Constitution; 2) for violation of art. 1, § 27 of the Texas Constitution;[3] 3) for violation of Tex. Gov't Code Ann. § 617.004 (Vernon 1994);[4] and 4) for violation of DISD school board policy DGA (Legal). Plaintiffs seek declaratory judgment, injunctive relief, compensatory and punitive damages, and attorneys' fees. In their answer, Defendants asserted, *inter alia*, the affirmative defense of qualified immunity. Under the terms of an agreed order entered Febru-

**2.** At the time the Complaint was filed, Garrett had not been terminated. In the course of administrative procedures to determine whether she should be terminated, DISD and Garrett allegedly reached a binding settlement agreement on October 9, 1998 under which Garrett would be placed on administrative leave with pay until November 30, 1998; would remain on administrative leave without pay from December 1, 1998 to December 18, 1998; and would voluntarily resign on December 18, 1998. DISD subsequently sought to enforce the agreement, and an administrative hearing was scheduled. Garrett filed a motion for a temporary restraining order on November 6, 1998 to prevent the hearing. The court denied Garrett's request for a temporary restraining order on November 13, 1998. The court assumes for purposes of this opinion that Garrett has since been terminated and that such termination constitutes an adverse employment action.

**3.** "The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

**4.** "An individual may not be denied public employment because of the individual's membership or nonmembership in a labor organization."

ary 22, 1999, Plaintiffs filed their First Amended Complaint on March 12, 1999, to respond to Defendants' claim of qualified immunity. Defendants filed their Motion for Judgment on the Pleadings on April 5, 1999.

## II. *Standard of Review*

Any party may move for judgment on the pleadings after the pleadings are closed and when it would not delay the trial. Fed.R.Civ.P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990). If, however, matters outside the pleadings are also presented to the court for consideration, a Rule 12(c) motion must be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(c); *Darlak v. Bobear,* 814 F.2d 1055, 1064 (5th Cir.1987). "Like a motion for summary judgment, a 12(c) motion should be granted only if there is no issue of material fact and if the pleadings show that the moving parties are entitled to judgment as a matter of law." *Perez v. Brown & Williamson Tobacco Corp.,* 967 F.Supp. 920, 924 (S.D.Tex.1997). A ruling on a motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir.1995); *see also St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991).

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the face of the pleadings. *Id.; Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999), *cert. denied,* 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey,* 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

## III. *Analysis*

Defendants raise several arguments in their motion for judgment on the pleadings. With respect to the 42 U.S.C. § 1983 claim, they contend that: 1) Dixon has failed to state a claim for violation of her First Amendment rights, because she suffered no adverse employment action; 2) Plaintiffs have failed to allege that DISD has an official policy or custom of retaliating against employees who exercise their First Amendment rights; 3) Roberts and Hughey are entitled to qualified immunity because Plaintiffs allege no affirmative

conduct on the part of either; and 4) Medrano is entitled to qualified immunity because his actions did not violate a clearly established constitutional right. With respect to the claims arising from Tex. Gov't Code Ann. § 617.004 and the Texas Constitution art. 1, § 27, Defendants argue that damages are not available under Texas law for such violations. Finally, Defendants argue that the cause of action for violation of the DISD school board policy is duplicative of the claim arising from the Government Code and should be dismissed for the same reasons.

### A. Section 1983 Claim

#### 1. Plaintiff Dixon

█ Defendants contend that Dixon has failed to state a claim upon which relief can be granted as to the § 1983 claim, because she suffered no adverse employment action. The § 1983 claim is based on alleged retaliation for exercising her right to freedom of association under the First and Fourteenth Amendment to the Constitution. To establish a constitutional claim for retaliation against the exercise of freedom of association, Dixon must show: 1) she suffered an adverse employment action; 2) her interest in associating with the union "must outweigh the Defendants' interest in promoting efficiency"; and 3) her association with the union must have motivated the adverse employment action. *Breaux v. City of Garland,* 205 F.3d 150, 156 (5th Cir.) (noting requirements for a retaliation claim predicated on free speech), *cert. denied,* 531 U.S. 816, 121 S.Ct. 52, 148 L.Ed.2d 21 (2000); *id.* at 157 n. 12 (noting that requirements for a retaliation claim predicated on free association are the same as those for one predicated on free speech except for the threshold public concern requirement).

█ Defendants contend that Dixon suffered no adverse employment action, a requirement for a § 1983 claim for retaliation. Adverse employment actions include "discharges, demotions, refusals to hire, refusals to promote, and reprimands" and can include transfers under some circumstances. *Id.* at 157 (internal quotation marks and citations omitted). The Fifth Circuit has explicitly declined to add other actions to this category. *Id.* Dixon alleges anti-union threats, harassment, and illegal threats of termination, *see* Complaint ¶¶ 49–52, but no actions by Defendants that constitute adverse employment actions. *See Breaux,* 205 F.3d at 157–58 (citing cases holding that, *inter alia,* accusations, investigations, and false accusations are not adverse employment actions for purposes of § 1983 actions, and concluding that "oral threats or abusive remarks [do] not rise to the level of an adverse employment action"); *cf. Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir.) (holding that a "verbal threat of being fired" is not an adverse employment action for purposes of Title VII), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). In the response brief, Plaintiffs argue that such harassment and threats by themselves constitute adverse employment action. In the case on which Plaintiffs rely, however, the adverse employment actions identified by the court were formal reprimands and demotions, not harassment and threats. *See Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220–21 (5th Cir.), *cert. denied,* 528 U.S. 1022, 120 S.Ct. 533, 145 L.Ed.2d 413 (1999). Plaintiffs cite no other cases, and the court's independent research has located none, that support a conclusion that harassment and threats of termination constitute adverse employment actions, and *Breaux* contradicts Plaintiffs' argument.

■ The court concludes that the facts alleged in the Complaint are insufficient to support a § 1983 claim by Dixon. Under some circumstances, the court will allow a plaintiff to replead a deficient complaint. In this case, however, the specific and detailed allegations offered by Dixon indicate that she has already come forward with her best case. *See Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir.1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."); *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir.1985) ("We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case. . . ."). The court therefore concludes that further attempts to amend the complaint would be futile. Accordingly, Dixon's § 1983 claim is dismissed.

## 2. *Local Government Liability*

■ DISD contends that it cannot be liable to Plaintiffs because they have not identified a particular DISD policy or custom and alleged that it was the actual cause of any injuries they allegedly suffered. Plaintiffs, on the other hand, contend that they have alleged sufficient facts to state a claim against DISD based upon a policy, custom, or practice. The court agrees with DISD that Plaintiffs have failed to state a claim upon which relief can be granted regarding a policy or custom of DISD, and Plaintiff will be required to replead this claim.

■ To resolve this issue, the court first cites the relevant authority which serves as a backdrop under which a local government can be held liable pursuant to 42 U.S.C. § 1983. A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity cannot be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.; see also Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [school district] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [school district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1305 (5th Cir.1995), *cert. denied,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996); *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984); *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific policy. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984), *cert. denied,* 472

U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). A plaintiff must establish that the governmental entity through its deliberate conduct was the moving force behind the injury or harm suffered and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Bryan County,* 520 U.S. at 403–04, 117 S.Ct. 1382.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett,* 728 F.2d at 769. The official complained of must possess

> [f]inal authority to establish [school district] policy with respect to the action ordered.... The official must also be responsible for establishing final government policy respecting such activity before the [school district] can be held liable.... [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–82, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Under Texas law, the final policymaking authority in an independent school district rests with the district's trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and cannot review the action or decision of the employee, agency, or board. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Worsham v. City of Pasadena,* 881 F.2d 1336, 1340–41 (5th Cir.1989).

In light of Fed.R.Civ.P. 8(a)(2) and *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), Plaintiffs must provide in their pleadings "a short and plain statement that the pleader is entitled to relief." The "short and plain statement" must contain facts "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). While it is not necessary for a plaintiff to prove or establish at this stage that she was injured as a result of a specific policy or custom of DISD, requiring her to identify the specific policy or custom and allege that the policy or custom adopted by DISD or a policymaking official was the "moving force" behind the alleged constitutional violation is in no way inconsistent with notice pleading or the mandate of *Leatherman.* Such requirement actually complements Rule 8 in that it puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory; otherwise, a defendant is not placed on notice of the grounds for the claim. Conclusory allegations cannot survive a motion to dismiss. *See Guidry,* 954 F.2d at 281.

The court believes that language from two Fifth Circuit cases decided after *Leatherman* is illustrative and controlling: *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162 (5th Cir.1997), and *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521 (5th Cir.1996). In *Spiller,* the court stated:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.' *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir. 1994). To satisfy the cause in fact requirement, a plaintiff must allege that

'the custom or policy served as the moving force behind the [constitutional] violation' at issue, *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996), or that her injuries resulted from the execution of the official policy or custom, *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992). The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller,* 130 F.3d at 167. Embodying this same principle and requirement with respect to pleading a cause of action regarding municipal policy or custom, but stated somewhat differently, the court in *Meadowbriar Home* stated:

> To support a claim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation.

*Meadowbriar Home,* 81 F.3d at 532–33 (citation omitted).

The court has reviewed the Complaint in detail and finds that it does not contain the basic and fundamental allegations to put DISD on notice as to the bases for Plaintiffs' claims regarding school district policy or custom. The only allegation in the Complaint that addresses DISD's involvement is as follows: "Dallas Independent School District has established a policy, practice, and custom of retaliating against employees who exercise their constitutional rights, including, but not limited to

these Plaintiffs, and all Defendants acted under color of law." Complaint ¶ 68.[5] There is no allegation of a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by" DISD, *see Eugene,* 65 F.3d at 1305. The allegations of specific instances of misconduct by the Principal at one school, directed against three teachers, do not constitute allegations of a "persistent, *widespread* practice of [DISD] officials or employees which, although not authorized by officially adopted and promulgated policy, is so *common* and well-settled as to constitute a custom that fairly represents [DISD] policy," *id.* (emphasis added), sufficient to meet the standard. The Complaint's general allegation concerning DISD in ¶ 68 is conclusory and does not meet the basic requirements for pleading school district liability under § 1983 as set forth in *Spiller* and *Meadowbriar.* The court concludes that the allegations in the Complaint are inadequate with respect to a policy or custom of DISD, and as such fail to state a claim upon which relief can be granted. The court will, however, allow Plaintiffs to replead the claim. Unlike Dixon's § 1983 claim, which the court dismisses without an opportunity for repleading, the conclusory allegation offered against DISD provides less assurance that Plaintiffs have already made their best case. The court therefore is less sure that Plaintiffs can prove no set of facts in support of the claim against DISD which would entitle them to relief. Dismissal at this point therefore is inappropriate. In repleading their § 1983 claim against DISD, however, Plaintiffs must meet the pleading requirements as described above.

---

5. The court further notes that the allegation in the Complaint does not even narrow the scope of the alleged policy, practice, and custom by specifying *which* constitutional rights DISD seeks to suppress. This is much too general to put DISD on notice as to the bases for Plaintiffs' claims.

### 3. *Qualified Immunity*

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants Roberts, Hughey, and Medrano have done so.

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. See *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034; *Stefanoff v. Hays County,* 154 F.3d 523, 525 (5th Cir.1998); *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir.1997). In *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs,*

475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995) (citing *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994)). Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster,* 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce,* 117 F.3d at 882; *Stefanoff,* 154 F.3d at 525.

When a public official defendant in a § 1983 action has raised the defense of qualified immunity, the plaintiff must plead facts with particularity before she may subject the public official to trial. *Elliott v. Perez,* 751 F.2d 1472, 1478 (5th Cir.1985); *see also Jacquez v. Procunier,* 801 F.2d 789, 791–92 (5th Cir.1986). This specificity of facts necessary in cases when qualified immunity has been asserted is referred to as the "heightened pleading" requirement, which requires a plaintiff to plead allegations of fact which focus specifically on the conduct of the individual who caused the plaintiff's injury. *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir.1999) (citing *Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir.), *cert. denied,* 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995)). The Fifth Circuit recently addressed the heightened pleading requirement and the district court's responsibility in such instances by stating:

First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity. Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist.

*Schultea v. Wood,* 47 F.3d 1427, 1433–34 (5th Cir.1995) (*en banc*). The task of the court is to determine whether the Complaint alleges with the requisite specificity the acts, conduct, or omissions by the Individual Defendants that would make them liable to Plaintiffs.

### a. *Defendants Roberts and Hughey*

Defendants argue that Roberts and Hughey are entitled to qualified immunity because Plaintiffs allege no affirmative actions on their part. For this argument, Defendants rely on *Baker v. Putnal,* 75 F.3d 190, 199 (5th Cir.1996) ("Supervisory officials may be held liable [under § 1983] only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."). Plaintiffs contend that Hughey and Roberts knew about Medrano's conduct but took no action to stop it, and thus in effect were affirmatively participating in those acts.

 The court cannot agree with Defendants' statement of the standard of liability for supervisory officials, at least to the extent that it would exclude deliberate indifference to a subordinate's violation of

constitutional rights. Even though Hughey's and Roberts' failure to act may not be "affirmative" [6] as Plaintiffs assert, *Baker* also clearly indicates that under some circumstances supervisory officials can be held liable for acts of omission, such as failure to train or supervise. *See id.* ("failure to supervise or train amount[ing] to gross negligence or deliberate indifference" which caused the violation of constitutional rights). Deliberate indifference to violations of constitutional rights is sufficient for supervisory liability under § 1983.

> There is no principle of superiors' liability, either in tort law generally or in the law of constitutional torts. To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct. That is a vague standard. We can make it more precise by noting that supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable, because negligence is no longer culpable under section 1983. Gross negligence is not enough either. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Jones v. City of Chicago,* 856 F.2d 985, 992–93 (7th Cir.1988); *see also Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 551 (5th Cir.1997) ("a supervisory official may be liable under section 1983 if that official, by action *or inaction,* demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights") (emphasis added).

---

6. *See, e.g.,* Black's Law Dictionary (7th ed.1999) at 59–60 ("That involves or requires effort <an affirmative duty>.")

The Complaint recounts two specific instances when Roberts was advised of anti-union threats by Medrano, *see* Complaint ¶¶ 29, 41. Implicit within those alleged communications was a request that Roberts take appropriate action to correct and prevent such violations of constitutional rights. The only other portion of the Complaint that specifically mentions communications to either of the supervisors about alleged constitutional violations by Medrano is ¶ 52: "Plaintiff Dixon informed both Defendant Superintendent Hughey and Defendant Mary Roberts, District 1 Superintendent, of Principal Medrano's anti-union threats and statements against Plaintiff Gail Ollie as well as Defendant Medrano's statements to her about being a troublemaker."

There are no specific factual allegations as to what Roberts and Hughey did in response to those communications, but the court concludes that such are not necessary when the claim is based on failure to act. Plaintiffs do allege such failure to act: "Defendants Mary Roberts and Dr. James Hughey were well aware of the illegal activities of Defendant Medrano and took no action whatsoever to protect the Plaintiffs from the unconstitutional actions of Defendant Medrano, which they were legally required to do." Complaint ¶ 67.

After reviewing the Complaint, the court concludes that Plaintiffs have met the "heightened pleading" requirement as to Roberts but not as to Hughey. The specific instances cited concerning communications to Roberts are alleged with specificity and particularity sufficient to meet the requirements, but the general allegation in ¶ 52 of the Complaint simply does not suffice. As stated before, the

allegations in the qualified immunity context must be specific, not conclusory or vague. While Plaintiffs have made the necessary legal conclusions and used the correct legal and technical buzzwords in ¶ 52, it simply does not set forth the requisite specific facts to defeat Hughey's claim of qualified immunity. It does not detail *how* or *when* Hughey became aware of *which* alleged constitutional violations by Medrano. Under existing precedent, Hughey is entitled to specific facts sufficient to prepare his defense. To hold that the Complaint sufficiently sets forth the requisite specificity as to his conduct would effectively nullify the heightened pleadings requirement and doctrine of qualified immunity in cases involving public officials.

The court concludes that the Complaint adequately alleges a § 1983 claim against Roberts, and Defendants' motion to dismiss as to the claim against her therefore is denied. The Complaint does not, however, adequately allege a § 1983 claim against Hughey. Usually with a motion for judgment on the pleadings, the court permits plaintiffs to replead in order to address a defendant's qualified immunity defense. The court also notes that the allegations with respect to Hughey are conclusory, as with the allegations of a custom or policy by DISD and unlike the specific allegations offered by Dixon in support of her § 1983 claim. This would ordinarily justify a second attempt by Plaintiffs to make their best case. In this case, however, as directed by the court's order of February 22, 1999, the First Amended Complaint was filed for the very purpose of addressing Defendants' claims of qualified immunity. Plaintiffs have already had two bites at the apple,[7] and the

---

**7.** Plaintiffs had a second opportunity to allege specific facts in support of finding a custom or policy by DISD in their First Amended Complaint as well. The court's order of Feb-

ruary 22, 1999, however, directed them to "file their response to Defendants' assertion of qualified immunity" but did not specifically put them on notice to address the issue of

court sees no purpose to extending them opportunities indefinitely. Accordingly, the motion to dismiss is denied as to the § 1983 claim against Roberts but granted as to the § 1983 claim against Hughey.

### b. *Defendant Medrano*

▆▆▆ Defendants assert qualified immunity for Medrano on the basis that the Complaint does not allege conduct which violated any clearly established constitutional right. They do not deny that Plaintiffs have a constitutional right to freedom of association, or that this encompasses the freedom of joining a union. Defendants challenge only whether the alleged conduct clearly violates those associational rights. Defendants argue that, under Fifth Circuit precedent, in order to establish a retaliation claim against employees' constitutional right to freedom of association in a union, Plaintiffs must show *inter alia* that their interest in associating with the union outweighs "the Defendants' interest in promoting efficiency." *Breaux,* 205 F.3d at 156–57 & n. 12.

Defendants are correct in asserting that such case-by-case balancing makes it difficult to determine in advance whether conduct will violate a clearly established constitutional right.

> One consequence of case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's first amendment rights. There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated "clearly established" constitutional

limitation of governmental liability. The court therefore concludes that it is appropriate to provide Plaintiffs an opportunity to replead as to the § 1983 claim against DISD but not as to the § 1983 claim against Hughey or by Dixon.

rights. *Connick* [*v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)] and *Rankin* [*v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)] exemplify the difficulty of delineating any bright-line constitutional rule that might furnish a test for denying qualified immunity in such actions.

*Noyola v. Texas Dep't of Human Resources,* 846 F.2d 1021, 1025 (5th Cir.1988). The court concludes, however, that the problems discussed in *Noyola* are not applicable to the same degree here.

▆▆▆ First, *Noyola* involved alleged violations of free speech rights, rather than associational rights, and the former implicate an additional consideration – whether the speech is protected. That is, "the employee making this contention must establish that his speech addressed a matter of public concern." *Id.* at 1023–24. No such requirement exists for associational rights. *Breaux,* 205 F.3d at 157 n. 12. Second, it is "rarely," but not *never,* that there will be "a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Noyola,* 846 F.2d at 1025. Termination of an employee for exercising her constitutional right to associate with a union [8] is one action that violates clearly established constitutional rights. *See Boddie v. City of Columbus, Miss.,* 989 F.2d 745, 749–50 (5th Cir.1993).

*Boddie* stated that the balancing test is still appropriate, although much more likely to weigh in favor of the employee for associational rights than for free speech

8. Defendants cite, as an example of conduct that might not clearly violate associational rights, the refusal of professional leave time to attend conferences. This example is disingenuous at best, given the far more serious allegations in the Complaint that the terminations of Garrett and Ollie were motivated by their membership in the union.

rights. *Id.* at 750. The balancing test, however, is only applicable if the defendant asserts an interest in terminating the employee *because of* her association with the union. "There was no interest to balance when this reason was rejected factually. This assertion, while important for the question of causation, is fatal to his claim of qualified immunity." *Id.* (citation and internal quotation marks omitted). The court construes *Boddie* to stand for the (somewhat startling) proposition that termination of a government employee for association with a union violates clearly established constitutional rights *unless* the defendant asserts an interest in terminating her *because of* union membership.[9] In this case, however, the court understands Defendants to have denied that the terminations of Garrett and Ollie were due to their union membership. Consequently, *Boddie* says that Plaintiffs have adequately alleged the violation of a clearly established constitutional right. Accordingly, Medrano is not entitled to the qualified immunity defense and the motion to dismiss the § 1983 claim as to him must be denied.

### B. *Texas Government Code and Texas Constitution Claims*

■ Defendants argue that a damages remedy is not available for violations of Tex. Gov't Code Ann. § 617.004 and the Texas Constitution, art. 1, § 27. *See City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex.1995); *Russell v. Edgewood Indep. Sch. Dist.,* 406 S.W.2d 249, 251 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r.e.). Plaintiffs did not contest this argument by Defendants, and the court's review confirms it. Accordingly, the court concludes that "it appears beyond doubt

that [Plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to [this form of] relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Defendants' motion is therefore granted as to these claims and damages will not be available for these claims. The court notes, however, that Plaintiffs have requested injunctive and declaratory relief as well, and the claims under the Texas Government Code and Texas Constitution remain valid for those forms of relief.

### C. *School Board Policy Claim*

■ The Complaint pleads a cause of action for the alleged violation of DISD school board policy DGA (Legal). The policy provides as follows:

> The Board or any District employee may not directly or indirectly require or coerce any teacher to refrain from participating in political affairs in his or her community, state, or nation. *U.S. Const., Amend. 1; Education Code 21.407(b)*

> The Board or any District employee may not directly or indirectly require or coerce any teacher to join any group, club, committee, organization, or association. An employee has the right to join or refuse to join any professional association or organization. *U.S. Const., Amend. 1; Education Code 21.407(a), 21.408*

> No person shall be denied District employment by reason of membership or nonmembership in a labor organization. *Gov't Code 617.004*

> The term "labor organization" means any organization in which employees participate that exists, in whole or in

---

9. Because such explanations are understandably rare, the Fifth Circuit apparently has not yet addressed such a situation. Consequently, a defendant in that situation might not have violated a clearly established constitutional right and qualified immunity *might* still be available.

part, to deal with one or more employers concerning grievances, labor disputes, wages, hours of employment, or working conditions. *Gov't Code 617.001*

*Dallas ISD, Employee Rights and Privileges: Association and Participation; Labor Organizations, at* http://www.tasb.org/policy/pol/private/057905/LPM/DGA(H)-P.html.

Defendants argue that this merely duplicates the provisions of Tex. Gov't Code Ann. § 617.004 and should be dismissed for the same reasons. The court tends to agree with Defendants. Causes of action for the alleged conduct are independently available under the United States Constitution, the Texas Government Code, and the Education Code. A remedy for violations for each of these is recognized either under federal or state statute or applicable case law. With respect to the DISD policy, however, there is no indication within the policy itself or specified in the Complaint that supports a legal basis for remedies. A violation of a policy or promise is not always legally cognizable. The court therefore is doubtful of this claim. Plaintiff may be able to establish, however, that they are entitled to relief under the DISD policy. Accordingly, Plaintiffs must replead this claim, stating a specific legal basis for recovery for violations of the policy and alleging the necessary facts to support that legal basis for recovery.[10]

## IV. *Conclusion*

For the reasons stated herein, Defendants' Motion for Judgment on the Pleadings is **granted in part** and **denied in part.** Dixon's § 1983 claim is **dismissed with prejudice** as to all Defendants. Plaintiffs' § 1983 claim is **dismissed with prejudice** as to Hughey only.

The court directs Plaintiffs to replead their § 1983 claim against DISD, with specific factual allegations which satisfy the standards set forth in this opinion, and their claim pursuant to the school board policy DGA (Legal), stating a specific legal basis for recovery and alleging sufficient facts to support that basis for recovery. An amended complaint to address these deficiencies must be filed within thirty days of the date of this order. Failure to comply with this order may result in dismissal of these claims without further notice.

Plaintiffs' § 1983 claim may proceed as to Roberts and Medrano. The claims pursuant to Tex. Gov't Code Ann. § 617.004 and the Texas Constitution, art. 1, § 27 may proceed against all Defendants, but the available relief for those claims excludes compensatory and punitive damages.

---

**10.** Plaintiffs' response brief argues that the policy is incorporated into the employment contracts of teachers, and therefore recovery is available under a breach of contract theory. Defendants, in the reply brief, contend that the policy is *not* incorporated into the employment contracts. Regardless of the contentions in Plaintiffs' response brief, the cause of action in the Complaint is *not* presented as a breach of contract claim. There is, in fact, no direct reference to any contract between Plaintiffs and DISD within the Complaint, let alone allegations supporting the conclusion that the policy was incorporated into such contracts.