# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-30184

GWENDOLYN BLACKWELL; DEMONA HARRISON; OPHELIA WILSON WALKER

Plaintiffs-Appellees

V.

ALBERT LAQUE, St. Charles Parish President

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-2105

Before KING, DeMOSS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Gwendolyn Blackwell, Demona Harrison, and Ophelia Wilson Walker ("Plaintiffs") brought due process, First Amendment, and various discrimination claims, along with a state law claim, against the St. Charles Parish and Parish President Albert Laque. All claims were related to Plaintiffs' employment with the Parish's Department of Community Services. Both defendants moved for summary judgment and Laque asserted that he was entitled to qualified

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

immunity. Although the district court granted that motion in part and dismissed several claims, it concluded that Laque was not entitled to qualified immunity on Plaintiffs' race discrimination, due process, and First Amendment claims. Laque appeals, arguing that he is entitled to qualified immunity.

I.

Plaintiffs, who are African-American females, were employed by St. Charles Parish in the Department of Community Services ("DCS") until June 2004. During Plaintiffs' employment, DCS employees were not part of the Louisiana civil service system.[1] In 2002, Plaintiffs and other DCS employees, with help from a Parish councilwoman, sought to have the DCS included in the civil service. Proponents of this effort contended that the St. Charles Parish Home Rule Charter made DCS employees eligible for inclusion in the civil service.

The Parish appears to have been ambivalent, or even opposed, to the proposal to include DCS employees in the civil service. For example, the Parish required proponents to seek the Louisiana Attorney General's opinion on whether DCS employees were eligible for civil service membership, and after the Attorney General confirmed their eligibility, the Parish commissioned an independent evaluation of the DCS. That evaluation resulted in a report recommending that three DCS staff positions be eliminated.

The report was issued in May 2004, and Laque authorized Plaintiffs' terminations the next month. Shortly after Plaintiffs' terminations, the Civil Service Board held a meeting on July 6, 2004, where it classified the remaining DCS workers as members of the civil service. Thereafter, Plaintiffs brought suit

---

[1] The purpose of the Louisiana civil service system is "to secure adequate protection to career public employees from political discrimination." Owen v. City of Shreveport, 705 So. 2d 795, 797 (La. Ct. App. 1998). "[A]n employee who has gained classified permanent civil service status has an entitlement to his position, since he has already received the position, and applicable law guarantees him continued employment, save for some exceptions." Bell v. Dep't of Health & Human Res., 483 So. 2d 945, 949 (La. 1986).

against the Parish and Parish President Albert Laque, asserting claims of race, gender, age, and national origin discrimination under Title VII of the Civil Rights Act of 1964; similar claims under 42 U.S.C. §§ 1981 and 1983; claims for First Amendment retaliation; claims for Fifth and Fourteenth Amendment due process violations; and a state law claim for intentional infliction of emotional distress. Both defendants moved for summary judgment and Laque additionally asserted that he was entitled to qualified immunity. The district court granted summary judgment to the defendants in part, dismissing Plaintiffs' age and national origin discrimination claims and their state law emotional distress claim. The district court denied the summary judgment motion on Plaintiffs' remaining claims and held that Laque was not entitled to qualified immunity.[2] In this interlocutory appeal, Laque appeals the denial of qualified immunity.

## II.

### A. Jurisdiction and Standard of Review

The district court concluded that Laque is not entitled to qualified immunity. "An order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251 (5th Cir. 2005) (internal quotation marks omitted). However, our jurisdiction is limited to reviewing questions of law. Meadours v. Ermel, 483 F.3d 417, 422 (5th Cir. 2007). The district court's finding that genuine factual disputes exist is a factual determination that we may not review in this interlocutory appeal, but the district court's finding that a particular dispute is material is a legal determination that we may review. Foley v. Univ. of Houston, 355 F.3d 333, 337 (5th Cir. 2003); see Meadours, 483 F.3d at 422 ("[W]e may only review the district court's conclusion that issues of fact are material (a legal

---

[2] In ruling on Laque's motion, the district court ordered "that Defendant Laque's Motion For Summary Judgment on the First Amendment claims and qualified immunity are DENIED." We find that this language was effective to reject Laque's assertion of qualified immunity as to each of Plaintiffs' claims.

question), but we may not review the conclusion that those issues of fact are genuine (a fact question)."). We review the district court's refusal to grant qualified immunity de novo. Atteberry, 430 F.3d at 252.

As we explain in more detail below, the qualified immunity analysis requires us to consider whether an official's conduct "is objectively reasonable in light of clearly established law." Kinney v. Weaver, 367 F.3d 337, 346 (5th Cir. 2004) (en banc). The legal determination involved in this analysis is whether "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." Id. The factual determination involved is whether "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." Id. When the district court finds that the evidence presented raises a genuine factual dispute "we accept the plaintiffs' version of the facts as true." Id. at 348 (summary judgment case); see also Gonzales v. Dallas County, 249 F.3d 406, 411 (5th Cir. 2001) ("Consequently, on interlocutory appeal the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.") (summary judgment case).

## B. Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions from civil liability "'insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" Flores v. City of Palacios, 381 F.3d 391, 393-94 (5th Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Applying this standard, we view the facts in the light most favorable to the party asserting the injury and determine (1) whether the defendant's conduct violated the plaintiff's constitutional rights, and (2) "whether the defendant[']s conduct was objectively reasonable in light of clearly established law." Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000) (internal quotation marks omitted); Scott v.

Harris, 127 S. Ct. 1769, 1774 (2007). If the defendant's conduct did not violate a plaintiff's constitutional rights under the first prong, or his conduct was objectively reasonable under the second prong, he is entitled to qualified immunity. Once a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to show that the defense is inapplicable. Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007).

The district court found that Laque was not entitled to qualified immunity on Plaintiffs' remaining claims: (1) race discrimination, (2) due process violation, (3) First Amendment retaliation related to the "push for civil service" and (4) First Amendment retaliation related to Plaintiffs' support for Laque's political opponent. We examine each in turn.

## 1. Race discrimination claim

Plaintiffs brought race discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. §§ 1981 and 1983 for alleged violations of the Equal Protection Clause.[3] We will not consider Plaintiffs' Title VII claim in this interlocutory appeal because "[i]ndividuals are not liable under Title VII in either their individual or official capacities." Ackel v. Nat'l

---

[3] We decline Laque's invitation to find that Plaintiffs' race discrimination and due process claims are waived. Laque argues that Plaintiffs failed to contest Laque's assertion of qualified immunity in their Opposition to Laque's motion for summary judgment. We recognize the well-established rule that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." See Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986); see also Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."). Plaintiffs presented arguments relevant to Laque's qualified immunity defense in their Opposition to Laque's summary judgment motion, although those arguments did not appear in the section of Plaintiffs' Opposition responding to Laque's qualified immunity defense. However, Plaintiffs' Opposition brief makes clear their contentions that race motivated the refusal to classify DCS employees as civil service and that their terminations violated their due process rights. Given Plaintiffs' discussion of the claims and relevant legal arguments, it cannot be said that Plaintiffs "ignored" issues raised in their complaint, see Grenier, 70 F.3d at 678, or that they failed to assert legal reasons why Laque's qualified immunity defense fails. See Vaughner, 804 F.2d at 877 n.2.

Commc'ns, Inc., 339 F.3d 376, 381 n.1 (5th Cir. 2003). However, this limitation does not extend to Plaintiffs' other causes of action, which we presently consider.

"[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks omitted)); Foley, 355 F.3d at 340 n.8. Thus, Plaintiffs are required to show that they were (1) members of a protected class, (2) qualified for the position at issue, (3) subject to an adverse employment action, and (4) that similarly situated individuals outside the protected class were treated more favorably. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). If Plaintiffs establish a prima facie case, the burden of production shifts to defendants to provide a "legitimate, nondiscriminatory reason" for the action. Id. at 512.

The district court held that Plaintiffs established a prima facie case of race discrimination because (1) they are African-American, (2) they are qualified for the positions at issue, (3) they were subject to adverse employment actions in that they were denied civil service status and ultimately terminated, and (4) there is a material factual dispute about whether similarly situated white employees were treated more favorably.

We agree that Plaintiffs have established a prima facie case of race discrimination for summary judgment purposes. There is no dispute on appeal that the first three elements are satisfied. Regarding the fourth element, the district court found that a genuine factual question exists regarding whether white employees were treated more favorably than Plaintiffs. We may not review that conclusion in this interlocutory appeal, and because that dispute is material to establishing a race discrimination claim, Plaintiffs have established a prima facie case. To the extent that Laque argues that Plaintiffs' terminations were part of the typical process for converting the department into the civil service,

and not the product of racial discrimination, the same genuine issue of fact cited by the district court—whether similarly situated white employees and Parish departments were treated more favorably—precludes qualified immunity at this stage of proceedings. See Kinney, 367 F.3d at 346-47. Recognizing that we may not review the district court's finding that genuine issues of fact exist, we conclude that for purposes of this appeal Plaintiffs have established a constitutional violation under the first qualified immunity prong.

We next consider the second qualified immunity prong: whether Laque's actions were objectively reasonable in light of clearly established law. See Goodson, 202 F.3d at 736. It was clearly established that the Equal Protection Clause of the Fourteenth Amendment prohibits racial discrimination of the sort alleged. Further, the district court found that a genuine dispute exists about whether white employees were treated more favorably. Viewing the facts in the light most favorable to the Plaintiffs, as we must, we cannot conclude that Laque's actions were objectively reasonable under clearly established law. See Kinney, 367 F.3d at 348. Thus, Laque is not entitled to qualified immunity on this claim.

### 2. Due process claim

Plaintiffs allege that Laque violated their Fifth and Fourteenth Amendment due process rights by terminating them without following the procedures required for terminating civil service employees. To establish a viable due process claim, Plaintiffs must show that they had a property interest in continued employment. See Cabrol v. Town of Youngsville, 106 F.3d 101, 105 (5th Cir. 1997) ("Absent a property interest, there is nothing subject to due process protections and our inquiry ends."). There is no automatic property interest in continued government employment. Id. However, "[i]n Louisiana, a permanent classified civil service employee has a protected property interest in her job." Wallace v. Shreve Mem'l Library, 97 F.3d 746, 748 (5th Cir. 1996); Bell

7

v. Dep't Health and Human Res., 483 So. 2d 945, 949 (La. 1986) ("[C]lassified civil service status is a property right . . . .").

Plaintiffs contend that the Parish Home Rule Charter gave them a property interest in their positions because it made them "de facto" civil service employees. Laque argues that Plaintiffs had no property interest in continued employment because they were not actually members of the civil service. Laque points out that the Parish Home Rule Charter and the State Attorney General opinion merely provide that Plaintiffs are eligible for inclusion in the civil service. To prevail on the second qualified immunity prong, Plaintiffs must show that Laque's conduct was not "objectively reasonable in light of clearly established law." Goodson, 202 F.3d at 736 (internal quotation marks omitted). We find that Plaintiffs have failed to make the required showing. Laque authorized Plaintiffs' terminations without providing them the benefit of procedural protections, but the record makes clear that a reasonable person in Laque's position would not have considered Plaintiffs to be entitled to those protections. See Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007) ("[T]he court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available."). Plaintiffs had never been recognized as part of the civil service and Plaintiffs' novel theory that they were "de facto" members of the civil service was not, and is not, clearly established law. Stated another way, based on the information then available, a reasonable person would not have felt it necessary to afford Plaintiffs the protections entitled to civil service members. Thus, Plaintiffs have failed to establish that Laque's actions were unreasonable in light of clearly established law and he is entitled to qualified immunity on this claim. See id.[4]

---

[4] The district court also found that genuine issues of fact exist regarding Laque's intent and involvement in the termination process. We find this dispute immaterial to Plaintiffs' due process claim. Even if Laque intentionally deprived Plaintiffs of procedural protections and was involved in the termination process, we find that those actions were not objectively

3. First Amendment claim related to Plaintiffs' "push for civil service"

Plaintiffs argue that they were terminated in retaliation for their involvement in the "push" to include the DCS in the civil service. In order to prevail on a § 1983 claim for First Amendment retaliation, Plaintiffs must show that (1) they "suffered an adverse employment decision," (2) their "speech involved a matter of public concern," (3) their "interest in commenting on matters of public concern outweighs [their] employer's interest in promoting efficiency," and (4) their "speech motivated the adverse employment decision." Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812, 825 (5th Cir. 2007).

"Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 184 (5th Cir. 2005). In making this determination, one approach is to consider whether the "public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Stotter, 508 F.3d at 825 (quotation marks omitted). In such a case we typically conclude that the speech does not involve a matter of public concern. See id. However, in cases "in which the employee speaks on a matter of public concern but also has a personal interest as well," we examine the content, context, and form of the speech to determine whether it is predominantly private in nature. Id.[5]

The district court found that Plaintiffs' "support and participation in the cause to include DCS employees in civil service addressed a public concern." The court reasoned that because Plaintiffs claimed that they were excluded from the civil service because of racial discrimination, their "push for civil service"

---

unreasonable for the reasons stated above.

[5] We have employed several approaches to analyzing mixed speech cases. See Stotter, 508 F.3d at 825. Because these approaches "ultimately ask the same question," id. at 825 n.4, we find it unnecessary to discuss each approach here.

involved a matter of public concern. Laque argues that the "push for civil service status" involved only matters of personal interest and did not involve a matter of public concern. See Teague v. City of Flower Mound, 179 F.3d 377, 381 (5th Cir. 1999) ("[W]e have held that speech concerning the conditions of one's employment is a private matter.").

While Plaintiffs' support for the "push for civil service" clearly furthered their personal interests, they have presented some evidence that they were excluded from the civil service system on the basis of race. We agree that this evidence indicates that Plaintiffs' speech also involved the broader public interest of remedying alleged racial discrimination in Parish employment.[6] Further, we have held that speech related to racial discrimination "almost always involves matters of public concern." Charles v. Grief, --- F.3d ----, No. 07-50537, 2008 WL 788618, at *5 (5th Cir. Mar. 26, 2008); see Victor v. McElveen, 150 F.3d 451, 456 (5th Cir. 1998) (characterizing "a protest against racial discrimination" as "inherently of public concern"). Given the evidence suggesting that Plaintiffs' speech was motivated, at least in part, by a desire to remedy racial discrimination, we conclude that Plaintiffs' speech involved a matter of public concern.

In addition, we reject Laque's argument that Plaintiffs' involvement in the "push for civil service" could not have motivated their terminations. On this point we must defer to the district court's conclusion that genuine issues of fact exist "as to [whether] Plaintiffs were terminated as a result of their involvement in the civil service inclusion process."[7] Laque raises no argument concerning the remaining elements and we conclude that Plaintiffs have established, for summary judgment purposes, a valid First Amendment claim.

---

[6] We note that Laque has not argued that Plaintiffs have failed to provide a "precise identification" of the speech at issue. See Foley, 355 F.3d at 342.

[7] We express no opinion on the merits of Laque's argument on this point.

Further, we cannot find at this stage that Laque's actions were objectively reasonable under clearly established law. See Goodson, 202 F.3d at 736. It has been clearly established for some time that a public employer may not retaliate against an employee because she exercised her right to engage in protected speech. Plaintiffs evidence, if believed, establishes just that. We conclude that Laque is not entitled to qualified immunity on this claim.

### 4. First Amendment claim related to Plaintiffs' political speech

Plaintiffs also argue that they were terminated for supporting Laque's political opponent, Darnell Abadie, in her campaign for Parish President. Plaintiffs supported Abadie's campaign and at least one of them displayed Abadie's political signs at her home. As mentioned, to prevail on a First Amendment claim Plaintiffs must establish that (1) they suffered an adverse employment decision, (2) their speech involved a matter of public concern, (3) their interest in commenting on matters of public concern outweighs their employer's interest in promoting efficiency, and (4) their speech motivated the adverse employment action. Stotter, 508 F.3d at 825. If Plaintiffs establish these four elements, "the burden shifts to defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct." Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001).

We agree that Plaintiffs' terminations constitute an adverse employment decision, and that their political speech constitutes a matter of public concern. See Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000) (termination is an adverse employment action);[8] Jordan v. Ector County, 516 F.3d 290, 297 n.24

---

[8] We need not decide whether the adverse employment action standard articulated in Burlington Northern & Santa Fe Railway Co. v. White applies to First Amendment retaliation cases, see Laredo Fraternal Order of Police v. City of Laredo, No. L-04-134, 2008 WL 678698, at *2 (S.D. Tex. March 12, 2008), because there is no dispute that termination constitutes an adverse employment action under any potentially applicable standard.

(5th Cir. 2008) (citing, inter alia, Aucoin v. Haney, 306 F.3d 268, 274 (5th Cir. 2002) ("There is no doubt that campaigning for a political candidate relates to a matter of public concern.")). Also, no argument has been made that Laque's interests in promoting efficiency outweigh Plaintiffs' interest in commenting on matters of public concern.

Turning to the final element, the district court found that genuine issues of fact exist regarding Laque's intent. As mentioned, we may not review the district court's conclusion that genuine issues of fact exist. Kinney, 367 F.3d at 347. Our review is limited to determining whether this issue is material. Laque's intent is material because this First Amendment claim hinges on whether Plaintiffs' political speech motivated Laque to terminate them. If Laque fired Plaintiffs in retaliation for their support of Abadie, as Plaintiffs' evidence appears to indicate, then this element would be satisfied and he would have violated their constitutional rights.

Regarding the second qualified immunity prong, Plaintiffs must establish that Laque's actions were not objectively reasonable in light of clearly established law. See Goodson, 202 F.3d at 736. As mentioned, it was clearly established that the First Amendment generally prohibits a public employer from retaliating against an employee because she exercised her right to engage in protected speech. See Stotter, 508 F.3d at 825. Given the genuine factual dispute about Laque's intent, we simply cannot conclude that Laque's actions were objectively reasonable under clearly established law. See Kinney, 367 F.3d at 348.

In affirming the district court's order on this claim, we reject Laque's argument that Plaintiffs have failed to show that their campaign support for Abadie motivated terminations that took place more than seven months later. The district court's conclusion that Laque's intent is genuinely disputed, leads us to reject this argument because Laque's intent is central to determining what

motivated the terminations. We also reject Laque's contention that Plaintiffs would have been terminated regardless of their political speech. Based on the evidence presented, we cannot determine whether Laque would have terminated these particular Plaintiffs absent their political speech because that determination is intertwined with Laque's subjective intent, a genuinely disputed fact issue.[9] Given the genuine issues of material fact concerning Laque's intent, we find that he is not entitled to qualified immunity on this claim.

## III.

For the foregoing reasons we affirm the part of the district court's order denying Laque's motion for qualified immunity on Plaintiffs' race discrimination claims and their First Amendment claims. We reverse the district court's order to the extent it denied Laque qualified immunity on Plaintiffs' due process claim. AFFIRMED IN PART, REVERSED IN PART.

---

[9] Laque claims that he merely relied on recommendations from his staff in deciding to terminate Plaintiffs and that his reliance on those recommendations was objectively reasonable. However, the district court's finding that genuine fact issues exist regarding Laque's intent prevent us from accepting his subjective explanation of intent.